IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CV-349-FL

| | |
|---|---|
| EUGENE WALLACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings (DE's 13, 23). The time for filing any responses or replies has passed. Accordingly, this matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636 (b)(1), this matter is before the undersigned for the entry of a memorandum and recommendation. For the following reasons, it is HEREBY RECOMMENDED that plaintiff's motion for judgment on the pleadings (DE-13) be DENIED, defendant's motion for judgment on the pleadings (DE-23) be GRANTED, and the final decision of the defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for supplemental security income ("SSI") on November 12, 2003, alleging disability beginning at birth (Tr. 20, 341). Plaintiff applied for disability insurance benefits ("DIB") on December 20, 2003, alleging disability beginning January 1, 1987 (Tr. 20, 341). Plaintiff's application for SSI was denied initially on March 30, 2004. Plaintiff's claims for SSI and DIB were combined and elevated to the reconsideration level. Both claims were denied upon reconsideration

1

on July 15, 2004 (Tr. 20, 341). A hearing was held before an Administrative Law Judge ("ALJ") on March 1, 2006. At the hearing, plaintiff amended his alleged onset date to November 12, 2003 (Tr. 20, 109, 209-213, 341). In an opinion dated March 16, 2006, the ALJ determined (1) that plaintiff was not disabled at any time since November 12, 2003, the date of plaintiff's SSI claim; and (2) that plaintiff was not disabled at any time since December 20, 2003, the date of plaintiff's DIB claim (Tr. 27, 348). The Social Security Administration's Office of Disability Adjudication and Review ("Appeals Council") denied plaintiff's request for review on January 26, 2007, thus rendering the ALJ's March 16, 2006 decision final (Tr. 6-9). Upon defendant's motion for remand, this court reversed the commissioner's decision and remanded the case to the commissioner for further proceedings (Tr. 279-282)[1]. A second hearing was held on April 3, 2009 (Tr. 289-317), and on April 23, 2009, the ALJ issued a second unfavorable decision (Tr. 250-257). Plaintiff filed a statement of exceptions on May 22, 2009 (Tr. 244-246). The Appeals Council declined jurisdiction over the matter, thus rendering the ALJ's April 23, 2009 decision final (Tr. 240–242).

Plaintiff filed a second SSI claim on March 30, 2006, alleging disability since March 17, 2006 (Tr. 329). This claim was denied initially and upon reconsideration on May 16, 2006 and July 12, 2006, respectively (Tr. 329). A hearing was held before an Administrative Law Judge ("ALJ") on March 10, 2007. The plaintiff did not attend the hearing. The hearing was continued upon plaintiff's request for a consultative examination (Tr. 329). A supplemental hearing was scheduled on October 23, 2007. Plaintiff did not attend the rescheduled hearing. The ALJ took testimony from the Vocational Expert ("VE") present at the hearing (Tr. 329, 337). In an opinion dated October 25,

---

[1]The court's order remanding this proceeding was filed on October 29, 2007 in 5:07-CV-79-D, (DE-22).

2007, the ALJ determined that plaintiff was not disabled at any time since March 30, 2006, the date plaintiff's application was filed (Tr. 337). The Appeals Council denied plaintiff's request for review on June 9, 2009, thus rendering the ALJ's October 25, 2007 decision final (Tr. 318-321). Plaintiff timely filed the instant action on December 18, 2009 (DE-13).

## Standard of Review

This court is authorized to review defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

"Under the Social Security Act, [the court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "[S]ubstantial evidence [is] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this court's review is limited to determining whether defendant's finding that plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## Analysis

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520©. If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

### 1. Plaintiff's November 13, 2003 Claim

In this claim, the ALJ employed the sequential evaluation. First, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 13, 2003, the application date (Tr. 252). At step two, the ALJ determined that plaintiff suffered from the following severe impairment: slower learner (Tr. 352). In completing step three, however, the ALJ indicated that plaintiff did not have an impairment or combination of impairments that were severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 253). The ALJ then proceeded with step four of his analysis and determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels that is simple, routine, and repetitive (Tr. 254). Because plaintiff had no past relevant work, the transferability of his job skills was not at issue (Tr. 255). The VE testified at the hearing that given all of these factors plaintiff could perform the requirements of jobs such as material handler, trash collector, washer, dining

4

room attendant, bagger, housekeeper/cleaner, small products assembler, and carwash attendant (Tr. 256). Moreover, the VE testified that the above listed jobs existed in significant numbers in the national economy (Tr. 256). Based on the VE's testimony, the ALJ concluded that plaintiff was capable of making a successful adjustment to other work which existed in the national economy (Tr. 256). After considering these factors, at step five of his analysis, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act since plaintiff's application date of November 13, 2003 (Tr. 256-257). In making his determination, the ALJ cited substantial evidence, a summary of which now follows.

Plaintiff was seen by Dr. M. Woodbridge on December 17, 2003[2]. Dr. Woodbridge reported that plaintiff could be "classified as . . . mentally retarded, mildly mentally retarded or just with a severe learning disability" (Tr. 185). Dr. Woodbridge further opined that plaintiff could not "hold down a job" (Tr. 185). On January 5, 2004, James Tedrow, a licensed psychological associate for the North Carolina Department of Health and Human Services Disability Determination Services, completed a psychological evaluation for plaintiff (Tr. 133-138, 450-455). Mr. Tedrow made the following assessment:

---

[2] The undersigned notes that in 1979 plaintiff suffered and was treated for electrocution burns (Tr. 110-122, 481-493).

> The record . . . reveals that [plaintiff] sustained an electrical shock on May 6, 1979. He was admitted to the hospital with wounds involving the scalp, back, buttocks, and left leg which were debrided. He was readmitted to the hospital on June 2, 1979 and underwent skin graft surgery to the left thigh on June 5, 1979. [Plaintiff] was seen in follow-up through August, 1979 but did not require any further treatment of his injuries related to the electrical shock.

> (Tr. 334).

5

Eugene Wallace is a 44-year-old white male who is referred for a psychological evaluation by the Department of Health and Human Resources - Disability Determination Services. Test results indicated that Mr. Wallace functions intellectually in a mild mental retardation range with a Full Scale IQ score of 70. This is considered to be a developmental disorder with the onset occurring was likely at birth. However, he also appeared to suffer a head injury as a result of an electrocution that occurred in 1978. This has further affected his memory skills and has contributed to his difficulty in learning new things. It should be noted that the test results are consistent with previous testimony given by Mr. Wallace and family members. Apparently, Mr. Wallace did participate in special education classes throughout his elementary and high school years.

Mr. Wallace has several functional limitations that will hinder his vocational and personal development. They are as follows:

1. Mr. Wallace will have a difficult time learning new tasks. More important, it will be even more difficult for him to retain new information. Given his cognitive limitations, he will need to work or participate in activities that offer only concrete, repetition of tasks with little attitude for decision making, judgment, or abstract thinking. He is not a good problem solver or long-term planner and therefore, must rely on others to help him with such endeavors.

2. Mr. Wallace lacks executive functioning skills. That is, he is limited in his ability to initiate, anticipate, generalize, sequence, and integrates information into a usable form.

3. Mr. Wallace's academic skills appeared to be limited although further testing would be needed to fully understand his capabilities. As noted earlier, he exhibited surprisingly strong skills in his ability to identify words. However, his comprehension and fluency skills were not tested. Furthermore, his ability to write was not evaluated. At any rate, he will most certainly need help in completing forms and in researching for opportunities in the community. He will also need help with financial matters given his lack of money management and mathematical skills.

4. It appears that Mr. Wallace does have severe memory deficits particularly for short-range tasks. Consequently, it is difficult for him to retain information.

5. Mr. Wallace needs structure in order to survive. He needs fairly consistent supervision in order to progress through the day. Without that supervision, he would certainly flounder. It is a positive sign that his family members recognize his limitations and take an active part in helping him make it through the day. It is recommended that Mr. Wallace be involved with various agencies in order to improve his lifestyle. Given his limitations, he mostly likely will need the help of either family members or community agencies in order to survive. He should be

refer [sic] to Vocational Rehabilitation to determine whether he has skills that could be use in a competitive setting. My sense about him was that he would be a good candidate for a sheltered employment. Tasks will need to be broken down into simple one-step approaches that are visually presented. It may be also worthwhile to further investigate the possibility that he has experienced head trauma. A neurological evaluation would be helpful. Memory testing should also be performed. The fact that he may have suffered head trauma, will make it even more necessary that he is in a repetitious, structured environment so that he his some sense of control.

In my opinion, Mr. Wallace is not able to manage his own benefits, should they be awarded.

(Tr. 136-137, 454-455).

Mr. Tedrow diagnosed plaintiff with mild mental retardation, but ruled out dementia due to head trauma secondary to electrocution (Tr. 136, 454). A second psychological evaluation was conducted on February 5, 2004 by Donna Mansour, a licensed psychological associate for the North Carolina Department of Health and Human Services Disability Determination Services (Tr. 139-142, 457-460). Ms. Mansour, made the following assessment:

> Eugene Wallace is a 44-year-old Caucasian male who arrived promptly for the assessment and was brought to the same by his brother. Mr. Wallace was oriented to time, place and person. His speech was relevant, coherent and audible. During testing he was able to understand and follow directions earning some credit on all subtests. He showed good effort and persistence and results are likely in [sic] accurate reflexion [sic] of his abilities.
>
> Based on current Wechsler Memory Scale Third Edition scores, Mr. Wallace is performing within the low average range as it relates to his ability to retain initially presented auditory information and extremely low range as it relates to his ability on delay, to retain initially presented visual information. He performed within the borderline range as it relates to his ability on immediate recall to retain initially presented visual information, overall immediate memory, ability on delay to retain initially presented auditory information, general memory and working memory when manipulating information in short term memory to determine an answer. Average abilities were indicated in his recognition on delay of initial presented auditory information. In comparing his index scores with his obtained IQ of 70 and noted in the records accompanying the DDS referral in the form of a psychological assessment dated 1/5/04. He is performing roughly commensurate with expectations

7

of his IQ and visual immediate, immediate memory, visual delayed, general memory and working memory. He is performing higher than expectations of his IQ in auditory immediate, auditory delayed, and auditory recognition delayed. Results would indicate that Mr. Wallace would require initial aggressive and consistent training to learn skills and likely require supervision to generalize and maintain skills.

Mr. Wallace was able to understand, retain and follow directions. He interacted appropriately with the evaluator. He did express concerns that he would not be abel [sic] to be his payee and indicated that he very strongly wanted to be his payee. He acknowledged that he has difficulty performing mental arithmetic computations but states that he can perform computation with paper and pencil without problem and feels that the can independently manage his funds. As this was not assessed by the evaluator a comment regarding this same could not rendered. It is difficult to ascertain whether his present memory functioning is commensurate with his probable premorbid memory functioning given the lack of background comparison data.

(Tr. 141-142, 459-460)

Dr. W.W. Albertson completed a mental RFC assessment for plaintiff on March 24, 2004 (Tr. 143-160). Dr. Albertson concluded that plaintiff's abilities to (1) remember locations and work-like procedure; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being distracted by them; (6) make simple work-related decisions; (7) ask simple questions or request assistance; (8) accept instructions and respond appropriately to criticism from supervisors; (9) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (10) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (11) be aware of normal hazards and take appropriate precautions were not significantly limited (Tr. 143-144). Plaintiff's abilities to (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; (3) complete a normal

work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) respond appropriately to changes in the work setting; (6) travel in unfamiliar places or use public transportation; and (7) set realistic goals or make plans independently of others were moderately limited (Tr. 143-144).

However, plaintiff's abilities to (1) understand and remember detailed instructions; (2) carry out detailed instructions were markedly limited (Tr. 143). In summary, Dr. Albertson opined that plaintiff could sustain and perform simple, routine, repetitive tasks and maintain attention and concentration in two hour increments for the performance of simple tasks. While plaintiff had moderate adaptive problems, he could take directions from a supervisor and adapt to routine changes (Tr. 145). Dr. Albertson further opined that

> [t]he psychologist in the report of 1/5/04 indicates that [plaintiff] cannot learn new tasks or retain information. The examiner also indicates a need for fairly consistent supervision in order to progress through the day. The objective evidence such as [plaintiff's] ability to drive a car and to work a CB radio as well as make a sandwich does not support such severe restrictions. In addition more testing does not support such restrictions. [Plaintiff] has limitations in the type of work that he can be expected to perform. He is not able to learn skilled jobs, but he can do SRRT's[3] in an environment without production standards.

(Tr. 145).

Also on March 24, 2004, Dr. Albertson completed a psychiatric review technique for plaintiff (Tr. 147-160). Dr. Albertson opined that plaintiff (1) had moderate limitations in restriction of activities of daily living; (2) had moderate limitations in difficulties in maintaining social functioning; (3) had moderate limitations in difficulties in maintaining concentration, persistence

---

[3]Acronym for simple, routine, repetitive tasks.

or pace; and (4) that there was insufficient evidence to determine episodes of decompensation of extended duration (Tr. 157). Dr. Albertson concluded that although plaintiff suffered from mental retardation, his medically determinable impairment was not severe and did not satisfy the diagnostic criteria of the disability determination (Tr. 147, 151).

On July 13, 2004, plaintiff underwent a second psychiatric review technique (Tr. 161-174). In consideration of plaintiff's diagnosis of mental retardation, Dr. W. Oliver Mann opined that plaintiff (1) had mild limitations in restriction of activities of daily living; (2) had moderate limitations in difficulties in maintaining social functioning; (3) had moderate limitations in difficulties in maintaining concentration, persistence or pace; and (4) had no episodes of decompensation of extended duration (Tr. 171). A second mental RFC was also completed by Dr. Mann on July 13, 2004 (Tr. 175-178). Dr. Mann concluded that plaintiff had the ability to understand and remember simple instructions; maintain the level of attention and concentration required to perform SRRTs in a low production setting; and was capable of interacting appropriately with coworkers and the general public. Dr. Mann further opined that while plaintiff would have some difficulty adapting to routine changes, he was capable of SRRTs in a low production, low stress environment (Tr. 177) .

Dr. Marianne Breslin completed a third mental RFC assessment on May 12, 2006 for plaintiff (Tr. 461-464). Dr. Breslin reported that plaintiff's abilities to (1) remember locations and work-like procedure; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; (5) sustain an ordinary routine without special supervision; (6) work in coordination with or proximity to others without being distracted

10

by them; (7) make simple work-related decisions; (8) interact appropriately with the general public; (9) ask simple questions or request assistance; (10) accept instructions and respond appropriately to criticism from supervisors; (11) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (12) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (13) be aware of normal hazards and take appropriate precautions and (14) travel in unfamiliar places or use public transportation were not significantly limited (Tr. 461-462). However, plaintiff's abilities to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) respond appropriately to changes in the work setting; and (6) set realistic goals or make plans independently of others were moderately limited (Tr. 461-462). Dr. Breslin concluded that plaintiff had some deficits in sustained concentration, but he was able to sustain sufficient attention to complete simple routine tasks for extended periods at a non-production pace. Plaintiff would also have some difficulty adapting to change but would be able to function with a stable work assignment. Lastly, Dr. Breslin opined, as Drs. Albertson and Mann, that plaintiff was capable of performing SRRTs in a low stress, low production setting (Tr. 463). In a third psychiatric review technique completed for plaintiff on May 12, 2006, Dr. Breslin concluded, as did Dr. Albertson, that while plaintiff suffered from mental retardation, his medically determinable impairment was not severe and did not satisfy the diagnostic criteria of the disability determination (Tr. 465, 469). Dr. Breslin's findings were affirmed on July 10, 2006 (Tr. 480).

Plaintiff testified at the hearing that he completed the twelfth grade through special education

classes, and that he failed the second grade (Tr. 299). Plaintiff stated that he held several labor jobs such as painting offices, posting fences, boiling tobacco, and detailing cars, but had not been in any of the jobs very long because he could not rely on his short term memory (Tr. 301-304). Plaintiff further testified that he had not held a job beyond one year, and that the longest job held was about three or four months (Tr. 300-301). Plaintiff further stated that his last job was at Food Lion as a "stocker" (Tr. 300). Plaintiff testified that he could not remember where to stock or restock items in the store (Tr. 300). Plaintiff stated that he worked at Food Lion for about three or four months (Tr. 301). Plaintiff testified that he was 5'10" and weighed about 165 pounds (Tr. 308). Plaintiff stated that he still had leg pain from his electrocution accident (Tr. 309). Plaintiff also testified that his eyesight was worsening (Tr. 306-307). With regards to plaintiff's testimony, the ALJ made the following findings:

> [Plaintiff] alleged that he is unable to work due to his poor memory. He failed the second grade and was in special education classes until he finished the twelfth grade. [Plaintiff] testified that he last worked as stocker at Food Lion, but was fired. He was able to do the job the same night he was shown how to do it, but the next night he could not remember where to stock the items. [Plaintiff] reported that he was too slow when working at the various jobs, such as painting, washing and detailing cars and putting up fences. He spends his days at his brother's home watching television and goes to the store with his girlfriend to buy groceries. He indicated that he is able to read the newspaper. [Plaintiff] claims that he has problems with his left leg as a result of the electrical burn at age 18 when a television antenna that he was holding hit a power line. He alleged that he cannot walk more than 100 yards before his leg feels heavy or numb, such allegation is not supported by medical evidence.
>
> After careful consideration of the evidence, the undersigned finds that any claimed leg condition is not a medically determinable impairment [sic] could reasonably be expected to cause the alleged symptoms; but his statements concerning the intensity, persistence and limiting effects are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> (Tr. 254-255).

In addition to plaintiff's testimony, the ALJ also weighed plaintiff's RFC. As to his findings, the ALJ stated the following:

> The undersigned has considered the objective medical evidence, [plaintiff's] subjective complaints and the opinions of the treating, examining and non-examining physicians and concluded that [plaintiff] has the residual functional capacity to perform work at any exertional level that is simple, routine and repetitive tasks.

(Tr. 255).

The VE testified that plaintiff could perform unskilled work of simple, routine, repetitive tasks and these jobs included material handler, trash collector, washer, dining room attendant, bagger, housekeeper/cleaner, small products assembler, and carwash attendant (Tr. 311-315). Based on the VE's testimony, the ALJ concluded, considering plaintiff's age, education, work experience, and residual functional capacity in conjunction with the Medical-Vocational Guidelines, that plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 256). Accordingly, the ALJ found that plaintiff had not been under a disability at any time since November 12, 2003, the date the application was filed (Tr. 256-257).

**2. Plaintiff's March 30, 2006 Claim**

In this claim the ALJ employed the sequential evaluation. First, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 30, 2006, the application date (Tr. 331). At step two, the ALJ determined that plaintiff suffered from the following severe impairment: mild mental retardation and a history of an electrical shock (Tr. 331). In completing step three, however, the ALJ indicated that plaintiff did not have an impairment or combination of impairments that were severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 332). The ALJ then proceeded with step four of his analysis and determined that

plaintiff had the RFC to perform a full range of work at all exertional levels with the nonexertional mental restrictions (Tr. 333). Because plaintiff had no past relevant work, the transferability of his job skills was not at issue (Tr. 336). The VE testified at this hearing that given plaintiff's limitations he could perform the requirements of a kitchen helper, dining room attendant, and grocery bagger, and that these jobs existed in significant numbers in the national economy (Tr. 535-537). The VE further testified that the DOT does not define jobs within the category of simple, routine, repetitive tasks, but instead uses a specific vocational profile (SVP) code. The VE stated that the above listed jobs have an SVP code of 2 indicating that they are unskilled work (Tr. 337, 535-537). Based on the VE's testimony, the ALJ concluded that plaintiff was capable of making a successful adjustment to other work which existed in the national economy. After considering these factors, at step five of his analysis, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act since March 30, 2006, the date the application was filed (Tr. 337). In making his determinations, the ALJ cited substantial evidence, a summary of which has already been detailed.

**Assignments of Error**

Plaintiff advances several assignments of error to the ALJ's decision. Specifically, plaintiff argues that: (1) the ALJ failed to consider all of plaintiff's symptoms; (2) the ALJ failed to properly consider the opinions of plaintiff's treating source; (3) the ALJ improperly disregarded the psychological consultative examinations; (4) the ALJ relied on inconsistent testimony of vocational experts; (5) the ALJ failed to grant counsel's request for a continuance; and (6) the ALJ's decision is not supported by substantial evidence.

Plaintiff's first, second, third, fourth, and sixth, assignments of error essentially charge that the ALJ improperly weighed and/or evaluated the evidence before him. Although plaintiff may

14

disagree with the ALJ's conclusions, the role of this court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. This court must uphold the defendant's factual findings if they are supported by substantial evidence. Id. The ALJ's findings of fact as to plaintiff's limitations and credibility determination are supported by substantial evidence. The undersigned has already discussed in detail the evidence the ALJ relied upon in reaching his conclusions. Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . . an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." Wireman v. Barnhart, 2006 WL 2565245 (Slip Op. at 8) (W.D. Va. 2006) (internal citations omitted). As to the opinion's of the treating physicians, the ALJ made the following findings:

> Medical records do not support the level of severity to preclude work activity. As indicated above [plaintiff] alleged left leg problems secondary to his accidental electrocution as a youth, but the medical records are absent regarding any complaints about leg pain which belies the severity of this allegation . . . .
>
> The undersigned gives considerable weight to the opinions of the State Agency medical consultants as they were based upon objective medical evidence. The undersigned gives little weight to Dr. Woodbridge's December 17, 2003 opinion as she only examined him once and her opinion is largely based upon his subjective complaints . . . .
>
> (Tr. 255).
>
> The opinions of the non-examining State agency medical and psychological consultants of record in this case, including their capacity assessments, have been considered and weighed in accordance with 20 CFR 416. 927(f) and Social Security Ruling 96-6p. Those consultants found that [plaintiff] had no severe physical impairment and that he could perform the mental demands of unskilled work in a low stress and low production environment (Exhibits 3F-6F). The Administrative Law Judge concurs with those opinions.
>
> (Tr. 336).

Plaintiff also argues that the ALJ failed to resolve conflicts between the VE's testimony and the DOT handbook summaries and, therefore, improperly relied on the VE's testimony. That is, plaintiff asserts that the ALJ failed to resolve conflicts within the evidence before him. It is the ALJ's responsibility to weigh the evidence in order to resolve any conflicts which might appear therein. <u>Wireman</u>, supra. The ALJ clearly articulated his findings as to plaintiff's non-disability. As to the VE's testimony, the ALJ confirmed that the testimony was consistent with the DOT (Tr. 256, 337, 536). The undersigned finds that the ALJ's decision of non-disability is supported by substantial evidence. As such, plaintiff's first, second, third, fourth and sixth assignments of error are meritless.

As his fifth assignment of error, plaintiff asserts that the ALJ failed to grant counsel's request for a continuance and held a hearing in his absence without finding that he was a non-essential witness. Plaintiff cites to the Social Security Administration Office of Disability Adjudication and Review Hearings, Appeals and Litigation Law Manual ("manual") I-2-4-25(D)[4]. Plaintiff asserts that "if a claimant's representative appears at a scheduled hearing without the claimant, the judge <u>must</u> determine whether the claimant is an essential witness for a proper determination of the case." (DE-15, p. 23) (emphasis in original). However, in a review of the manual, the undersigned finds no such language. I-2-4-25(D) provides:

> If a claimant's representative appears at a scheduled hearing without the claimant:
>
> 1. The ALJ may determine that the claimant has constructively waived the right to appear at the hearing if the representative is unable to find the claimant, the notice of hearing was mailed to the claimant's last known address, and the contact procedures of 20 CFR §§ 404.938 and 416.1438 have been followed. If the hearing

---

[4]Plaintiff refers to this document as HALLEX I-2-425 (D) (DE-15, p.23).

includes expert witnesses, the ALJ may choose to proceed with the hearing, accepting the testimony of the witnesses and allowing the claimant's representative to question the witnesses and make arguments regarding the claimant's application. The ALJ should advise the claimant's representative that a Notice to Show Cause will be issued asking the claimant why he or she did not appear, and why a supplemental hearing should be held. If the claimant fails to respond to the Notice to Show Cause or fails to provide good cause for failure to appear at the scheduled hearing, the ALJ may then determine that the claimant has constructively waived his or her right to appear for a hearing, and the ALJ may issue a decision on the record.

2. If the claimant provides good cause for failure to appear, the ALJ will offer the claimant a supplemental hearing to provide testimony.

NOTE: If a representative appears at a scheduled hearing without the claimant, dismissal is never appropriate.

<u>Hearing, Appeals and Litigation Law Manual I-2-4-25(D)</u>.

Plaintiff failed to appear for the hearing scheduled on May 10, 2007. Plaintiff requested a supplemental hearing be scheduled in order to attend a consultative exam. This hearing was rescheduled for October 23, 2007 (Tr. 529). Plaintiff neither showed for the consultative exam nor the October 23, 2007 hearing. The ALJ obtained testimony from the VE at the October 23, 2007 hearing, and plaintiff's representative was able to question the VE (Tr. 535-537). The ALJ's action were consistent with I-2-4-25 (D). Accordingly, the undersigned finds plaintiff's fifth assignment of error is also meritless.

**Conclusion**

For the reasons discussed above, it is HEREBY RECOMMENDED that plaintiff's motion for judgment on the pleadings (DE-13) be DENIED, defendant's motion for judgment on the pleadings (DE-23) be GRANTED, and the final decision of the defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 6th day of May, 2010.

_____
William A. Webb
U.S. Magistrate Judge